## RAILROAD COMPANY v. COLLECTOR.

1. The tax on interest paid by corporations under sect. 122 of the internal-revenue law, as amended by the act of July 13, 1866 (14 Stat. 138), is an excise tax on their business, to be paid by them out of their earnings, income, and profits.

2. In order that its payment might be secured, this tax was laid on the subjects to which these earnings were applied in the usual course of business of such corporations; namely, dividends, interest on funded debt, construction, or some reserve fund held by the company.

3. Such a tax is not invalidated by the provision that the amount of it may be withheld from the dividend or the interest due or payable to the stockholder or the bondholder, who is a citizen or a subject of a foreign government, with no residence in this country.

ERROR to the Circuit Court of the United States for the District of Massachusetts.

This is a suit by the Michigan Central Railroad Company against Charles W. Slack, collector of internal revenue for the third collection district of Massachusetts, to recover a tax or duty of $860.33, paid to him, under protest, on the twenty-eighth day of February, 1870; which tax was assessed on or about the 19th of that month on sterling bond interest paid by said company in London in gold, in the previous month of January, by cashing certain coupons which then fell due.

The coupons were attached to certain sterling bonds issued by said company, to the amount of £95,700, and negotiated by their agents in London in 1852, or early in 1853. The bonds were due in July, 1872, and paid at maturity, in gold, in London.

So far as the company know, not one of them was ever held by any person in the United States, or by other than non-resident aliens, and the interest accruing was regularly paid in gold in full in London, without rebate or reservation of the United States internal-revenue tax.

Appeal was duly made to the Commissioner of Internal Revenue before this suit was brought.

The court below found for the defendant, whereupon the company brought the case here, and assigns for error that the court below erred in finding that Congress had power to impose

the tax in controversy, and that, upon the facts, judgment must be for the defendant.

*Mr. Francis W. Palfrey* for the plaintiff in error.

It is a conceded proposition that the United States has not the power to tax non-resident aliens directly. As persons, they are not liable to our taxation. But it is alleged that their property was within our jurisdiction, and therefore taxable. The reply to this proposition is : —

1. That it is settled law in this court that the internal-revenue taxation on coupon interest is a tax on income, and so a tax on persons.

2. That the money set apart by the railroad company to pay the coupon interest due to its non-resident alien bondholders was not taxable property within the jurisdiction of the United States.

In support of the first proposition, it can hardly be necessary to do more than to cite *Haight* v. *Railroad Company*, 6 Wall. 15; *Railroad Company* v. *Jackson*, 7 id. 262, 269; *Barnes* v. *The Railroads*, 17 id. 294; *United States* v. *Railroad Company*, id. 322; *Stockdale* v. *Insurance Companies*, 20 id. 323, 330, 337; *Railroad Company* v. *Rose*, 95 U. S. 78.

And in support of the second : *State Tax on Foreign-held Bonds*, 15 Wall. 300, 324, 325; *Murray* v. *Charleston*, 96 U. S. 432; *Caruthers* v. *Humphrey*, 12 Mich. 270; *Van Husan* v. *Kanouse*, 13 id. 303; *Union Bank* v. *The State*, 9 Yerg. (Tenn.) 490; *Oliver* v. *Washington Mills*, 11 Allen (Mass.), 268, 273.

*The Solicitor-General, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

As the sum involved in this suit is small, and the law under which the tax in question was collected has long since been repealed, the case is of little consequence as regards any principle involved in it as a rule of future action.

The tax was assessed under sect. 122 of the internal-revenue law, as amended by the act of 1866. What is pertinent to this case reads as follows : —

"Any railroad, canal, turnpike, canal-navigation, or slack-water company, indebted for any money for which bonds or other evidence of indebtedness have been issued, payable in one or more years

after date, upon which interest is stipulated to be paid, or coupons representing the interest, or any such company that may have declared any dividend in scrip, or money due or payable to its stockholders, including non-residents, whether citizens or aliens, as part of the earnings, profits, income, or gains of such company, and all profits of such company carried to the account of any fund, or used for construction, shall be subject to and pay a tax of five per centum on the amount of all such interest or coupons, dividends or profits, whenever and wherever the same shall be payable, and to whatsoever party or person the same may be payable, including non-residents, whether citizens or aliens; and said companies are hereby authorized to deduct and withhold from all payments on account of any interest, or coupons, and dividends due and payable, as aforesaid, the tax of five per centum; and the payment of the amount of said tax so deducted from the interest, or coupons, or dividends, and certified by the president or treasurer of said company, shall discharge said company from that amount of the dividend or interest, or coupon on the bonds, or other evidences of their indebtedness so held by any person or party whatever, except where said companies have contracted otherwise." 14 Stat. 138.

The agreed statement on which the case was tried shows that the tax was for interest paid by the company on sterling bonds in London, which bonds were issued long before the internal-revenue law was enacted, and it is perhaps fairly to be inferred from the statement that the bonds were held at the time by foreigners.

It is on this latter feature of the case that resistance to the tax is founded. It is urged that it is a tax on the property — if property it may be called — of persons not subject to the jurisdiction of this government, and therefore beyond the power of Congress to levy or enforce.

That the tax was actually collected without resistance, and the present suit is brought to recover it back, is sufficient answer to the assertion that it could not be enforced.

Whether Congress, having the power to enforce the law, has the authority to levy such a tax on the interest due by a citizen of the United States to one who is not domiciled within our limits, and who owes the government no allegiance, is a question which we do not think necessary to the decision of this case.

The tax, in our opinion, is essentially an excise on the business of the class of corporations mentioned in the statute. The section is a part of the system of taxing incomes, earnings, and profits adopted during the late war, and abandoned as soon after that war was ended as it could be done safely. The corporations mentioned in this section are those engaged in furnishing road-ways and water-ways for the transportation of persons and property, and the manifest purpose of the law was to levy the tax on the net earnings of such companies. How were these " earnings, profits, incomes, or gains" to be most certainly ascertained? In every well-conducted corporation of this character these profits were disposed of in one of four methods; namely, distributed to its stockholders as dividends, used in construction of its roads or canals, paid out for interest on its funded debts, or carried to a reserve or other fund remaining in its hands. Looking to these modes of distribution as the surest evidence of the earnings which Congress intended to tax, and as less liable to evasion than any other, the tax is imposed upon all of them. The books and records of the company are thus made evidence of the profits they have made, and the corporation itself is made responsible for the payment of the tax.

Manifestly such a mode of ascertaining the net earnings of the company would not be complete unless the sums paid as interest on their bonded debts were taken into the account.

Of course it was competent for Congress to tax only the earnings after *deducting* this interest paid on their debt, or to treat the sum so paid as part of the net earnings, and paid out of them as dividends were. It adopted the latter policy.

It results from this course of observation that the tax was not laid on the bondholder who received the interest, but on the earnings of the corporation which paid the interest.

It is very true that the act went further, and declared that, except when the company had contracted otherwise, it might deduct this tax from the amount due the bondholders. And where the bondholder was subject to congressional legislation, by reason of citizenship, residence, or *situs* of the property taxed, it was within the lawful power of Congress to do so. Whether, as a question of international law, this declaration

would relieve the corporation from the obligation to pay its foreign bondholder the full sum for which it contracted, we need not discuss; for this court, on all such subjects, is bound by the legislative and political departments of its own government. The tax is laid by Congress on the net earnings, which are the results of the business of the corporation, on which Congress had clearly a right to lay it; and being lawfully assessed and paid, it cannot be recovered back by reason of any inefficiency or ethical objection to the remedy over against the bondholder.

*Judgment affirmed.*